MORGAN, LEWIS & BOCKIUS, LLP
Peter E. Halle (admitted *pro hac vice*)
phalle@morganlewis.com
Thomas J. Lang (admitted *pro hac vice*)
tlang@morganlewis.com
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: 202.739.3000
F: 202.739.3001
*Attorneys for Defendants*
TYC Brother Industrial Co., Ltd. & Genera
Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE AFTERMARKET AUTOMOTIVE LIGHTING PRODUCTS ANTITRUST LITIGATION | Case No. 2:09-ml-02007-GW (PJWx) |
| | Assigned for all purposes to The Honorable George Wu |
| | **DEFENDANTS GENERA CORPORATION AND TYC BROTHER INDUSTRIAL CO. LTD.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
| | Hearing Date:    Sept. 26, 2011 |
| | Hearing Time:   8:30 a.m. |
| | Courtroom 10 |

Defendants TYC Brother Industrial Co. Ltd. and Genera Corporation ("TYC and Genera") submit this brief in opposition to Direct Purchaser Plaintiffs' ("Plaintiffs") Motion for Preliminary Approval of Settlement with Defendants Depo Auto Parts Industrial Co. Ltd. and Maxzone Vehicle Lighting Corp., ("Motion").[1]

## I.   <u>INTRODUCTION</u>

Plaintiffs' proposed settlement agreement with Depo and Maxzone ("Depo Settlement Agreement") should not be approved for three reasons.  *First*, the Depo Settlement Agreement contains a Most Favored Nations ("MFN") provision in paragraph 34 that runs directly counter to the purposes of the Antitrust Criminal Penalty Enforcement Reform Act of 2004 ("ACPERA") by prohibiting settling plaintiffs from taking into account TYC and Genera's unique status as amnesty applicants in the DOJ's Corporate Leniency Program in any settlement.[2]  *Second*, the Depo Settlement Agreement's MFN provision unreasonably and unfairly prejudices non-settling Defendants and class members who might wish to settle with them by leaving the "settling plaintiffs" (1) exposed to clawbacks, and (2) without certainty until the end of the litigation.  *Third*, the Motion references a secret "side letter agreement" with Depo that neither class members nor Defendants have been able to review to determine whether it may affect their interests.

For all these reasons the Court should exercise its authority over class action settlements under Federal Rule of Civil Procedure 23(e) and decline to approve the proposed Depo Settlement Agreement as written.

## II.   <u>FACTUAL BACKGROUND</u>

Depo and the Co-Lead Class Counsel signed a proposed settlement

---

[1] This opposition is directed solely at the proposed Settlement with Depo and Maxzone.  TYC and Genera do not oppose preliminary approval of the proposed settlement with the Sabry Lee entities.

[2] Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, §213(b), 118 Stat. 665, 666 (codified as amended at 15 U.S.C. § 1).

agreement on April 26, 2011, over four months ago, which they kept under wraps until they submitted it to the Court on August 29, 2011 seeking preliminary approval.  The proposed Depo Settlement Agreement contains a lengthy and complex Most Favored Nations provision in paragraph 34.[3]  Paragraph 34 provides that any class plaintiff that accepts the Depo Settlement Agreement also agrees that it will settle with any non-settling Defendant for no less than the amount that Depo settled for (as a percentage of that non-settling Defendant's sales).  If any class

_____

[3] The full text of the MFN provision is as follows:

Settling Plaintiffs agree that they will not settle with the other Defendants in the Action on terms that are proportionately more favorable as to amount, time of payment or opt out rights without extending those more favorable terms to Depo.  A settlement is proportionately more favorable as to amount if it represents less than 5.6% of a settling defendant's sales during the class period as specified in plaintiffs' motion for class certification (Depo's sales, as specified in Settling Plaintiffs' motion for class certification were $443,845,388).  In that event, Depo's settlement amount will be reduced to that lesser percentage.  (Example:  TYC settles for $29,690,114 which represents 5% of its sales during the class period as specified in Settling Plaintiffs' motion for class certification. Depo's settlement amount will be reduced to $ 443,845,388 x .05, or $ 22, 192,269).  The fact that Settling Plaintiffs may agree or the Court may determine that the total amount of sales made by any non-settling Defendant during the class period is less than the amount specified in Settling Plaintiffs' motion for class certification shall not affect the minimum settlement percentage required by this paragraph. This provision shall not apply in the event: (a) that the Court does not certify a class, (b) that a Defendant prevails on the merits at summary judgment or trial, or (c) that the Court, at the time of imposing judgment or otherwise determining liability and damages, grants TYC's request for detrebling pursuant to ACPERA over the objections of Class Counsel.  In the event that the Settlement Fund is distributed to the Settling Plaintiffs before it is determined that a reduction is required pursuant to this paragraph, then funds from settlements reached with other Defendants shall be used to provide to Depo the refund it is owed.  If it is determined that any refund is due to Depo pursuant to this paragraph, the parties shall promptly notify the Escrow Agent, and the refund shall be made within 10 days of delivery of said notice.  Any refund made to Depo pursuant to this paragraph shall have added to it a pro rate share of interest earned on the funds in the Escrow Account.

*See* Exhibit A to the Declaration of Jason S. Hartley in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants (1) Depo Auto Parts Industrial Co. Ltd. and Maxzone Vehicle Lighting Corp.; and (2) Sabry Lee (U.S.A.) Inc. and Sabry Lee Limited ("Hartley Decl.").

2

plaintiff were to settle for less, that class plaintiff must refund to Depo an amount equal to the percentage difference between the two settlements. Two of the Defendants at whom this MFN provision is aimed – TYC and Genera – have been accepted into the U.S. Department of Justice's Corporate Leniency Program as conditional amnesty recipients under ACPERA. Accordingly, this provision could have the effect of requiring plaintiffs that settle with TYC and Genera for a lesser percentage than they settle with Depo to refund the difference to Depo – a company that did not timely cooperate with the government, has not plead guilty, and which denies any liability for their actions in their proposed settlement agreement.[4]

In addition to the terms of the proposed Depo Settlement Agreement, Plaintiffs' memorandum in support of its Motion notes that there is an unspecified "side letter agreement entered into in conjunction with the Depo Settlement Agreement that is being submitted in camera to the Court." Memo at 6, fn. 3. On September 2, 2011, counsel for TYC and Genera wrote to co-lead Class Counsel requesting that the contents of plaintiffs' secret side letter agreement with the Depo be disclosed. *See* Declaration of Thomas J. Lang In Support of Defendants Genera Corporation and TYC Brother Industrial Co. Ltd.'s Opposition to Plaintiffs' Motion for Preliminary Approval of Settlement ("Lang Decl.") ¶ 4, Exh. A.  On September 3, Class Counsel declined this request. *Id*. at ¶ 5, Exh. B.

## III.   THE COURT SHOULD REJECT  THE PLAINTIFFS' PROPOSED SETTLEMENT AGREEMENT WITH DEPO AND MAXZONE

### A.   The MFN Should Be Rejected as it Purports to Strip Amnesty Applicants TYC and Genera of Statutorily Granted ACPERA Benefits in Settlement and Thereby Confounds the Statutory Purpose of ACPERA.

Rule 23(e)(2) of the Federal Rules of Civil Procedure provides that "the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed,

---

[4] *See* proposed Depo Settlement Agreement at page 2 ("Depo, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto….")

or compromised only with the court's approval . . . after a hearing and on finding that it is fair, reasonable, and adequate." The Court has authority to interpret and accept or reject the MFN provision at issue. *See, e.g., In re Chicken Antitrust Litig.*, 560 F. Supp. 943, 945 (N.D. Ga. 1979) ("questions concerning interpretation and application of the most-favored-nations clauses are manifestly within the ambit of the court's sweeping class settlement approval authority.")

The MFN provision in the proposed Depo Settlement Agreement fails to comply with traditional standards of fairness and reasonableness as it undermines the purpose of the ACPERA statute which is a key component of the DOJ's Corporate Leniency Program. ACPERA enhances the incentive for corporations to participate in the DOJ's Corporate Leniency Program by limiting the damages recoverable from a corporate amnesty applicant to the damages actually inflicted by the applicant's conduct. The Antitrust Division of the DOJ has stated that ACPERA's damages limitation "removes a major disincentive for self-reporting and makes the Division's Corporate Leniency Program even more effective at detecting and prosecuting cartels." [5] In fact more than half of the Antitrust Division's international criminal investigations rely on information received from an applicant to the leniency program.[6]

As a practical matter, ACPERA effectively detrebles damages and eliminates joint and several liability that would otherwise be faced by the accepted amnesty applicant. The benefits this provision confers are available (1) only to those

---

[5] Deputy Assistant Attorney General Scott D. Hammond, "Recent Developments, Trends, and Milestones in the Antitrust Division's Criminal Enforcement Program," address before the ABA Section of Antitrust Law (Mar. 26, 2008), available at http://www.justice.gov/atr/public/speeches/232716.pdf, last accessed on September 4, 2011. Lang Decl. at ¶ 6, Exh. C.

[6] Deputy Assistant Attorney General Scott D. Hammond, "The Evolution of Criminal Antitrust Enforcement Over the Last Two Decades," address before the National Institute on White Collar Crime (Feb. 25, 2010), available at http://www.justice.gov/atr/public/speeches/255515.htm, last accessed on September 4, 2011. Lang Decl. at ¶ 7, Exh. D.

companies that have entered into a leniency agreement with the DOJ, and (2) "if the court in which the civil action is brought determines, after considering any appropriate pleadings from the claimant, that the applicant or cooperating individual…has provided satisfactory cooperation to the claimant with respect to the civil action…." [7]

Defendants TYC and Genera reported the conduct at issue in this case to the DOJ's Antitrust Division in September 2008, and were accepted into the Antitrust Division's Corporate Leniency Program. *See* Lang Decl. at ¶ 8. Thus, the liability limiting benefits of ACPERA are available to TYC and Genera – assuming they satisfy the requirements of the ACPERA statute.[8]   TYC and Genera believe that they are in compliance with the requirements of ACPERA, but now is not the time to determine that fact.  While the statute does not specify when the Court's determination of compliance with ACPERA's requirements should be made, one of the few District Courts that have addressed the issue concluded that it is at the end of the litigation.  "The language of ACPERA suggests that the Court's assessment of an applicant's cooperation occurs at the time of imposing judgment or otherwise determining liability and damages."  *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 618 F. Supp. 2d 1194, *1196 (N.D. Cal. 2009).

The proposed Depo Settlement Agreement seeks the Court's blessing to permit a criminal target of the DOJ (Depo) to specify that it will settle *only if* Class Counsel will oppose ACPERA benefits for co-Defendants with a DOJ amnesty

---

[7] Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, §213(b), 118 Stat. 665, 666 (codified as amended at 15 U.S.C. § 1 note).

[8] Those requirements are:  providing a full accounting to the civil plaintiff of all facts that are potentially relevant to the civil action, furnishing all documents or other items potentially relevant to the civil action that are in the possession or control of the leniency applicant, making cooperating individuals available for interviews, depositions, or testimony in connection with the civil action as the plaintiff may reasonably require, and using  "best efforts to secure and facilitate" cooperation from individuals.  *Id*. at § 213(b)(3)(B).

agreement.  *See* Depo Settlement Agreement at ¶34. Depo is using its financial prowess to punish TYC and Genera for their cooperation with the DOJ.  The MFN provision in the proposed Depo Settlement Agreement is against public policy in that it works against the purpose of ACPERA's goal of encouraging companies to enter the Corporate Leniency Program as amnesty applicants.

Specifically, if allowed to stand, the MFN would punish any "settling plaintiff" who takes into account TYC and Genera's amnesty applicant status and agrees to a settlement with TYC and Genera that is less than the 5.6% of sales that Depo agreed to pay.  *See* Depo Settlement Agreement at ¶ 34.  But 5.6% is the "gross settlement amount," not what settling plaintiffs will actually recover from the proposed Depo Settlement Agreement.   They will be paid out of the "net settlement fund," which will be a far smaller percentage of sales.  *See* Hartley Decl. Exh. C at Sec. III.

Under the MFN, "settling plaintiffs" who later agree to settle with TYC and Genera for say 4% of sales due to the possibility that TYC and Genera would obtain reduced liability under ACPERA would bear the risk that they might have to pay DEPO/Maxzone a "refund" equivalent to 1.6% of Depo's sales, unless the case goes all the way to trial and the Court determines that TYC and Genera satisfied ACPERA.  *See* Depo Settlement Agreement at ¶34.  The MFN thus prematurely and impermissibly strips the benefits of ACPERA from TYC and Genera and confounds one of the key purposes of Congress enacting ACPERA's civil damages limitation in the first place.  Further, it forces the ACPERA recipient to trial so that it can obtain a ruling regarding its compliance by the Court.  If a company considering whether to apply for criminal amnesty in DOJ's Corporate Leniency Program knows that a co-Defendants' civil settlement agreement can, through an MFN, prohibit plaintiffs from taking into account the amnesty applicant's potential access to ACPERA liability limitations and force a trial, then companies will place

less value on the amnesty program and may decide not to cooperate with the DOJ. Moreover, those who are eligible for ACPERA benefits, like TYC and Genera, would not have the benefit of their pre-judgment compliance with its provisions.

The proposed Depo Settlement Agreement should be rejected so that TYC and Genera can obtain the benefits they rightly anticipated when they applied for amnesty under ACPERA's statutory provisions. [9]

### B. Enforcement of the Proposed Settlement Agreements' MFN Clause Would be Inequitable

Most Favored Nations provisions of the type contained in the proposed Depo Settlement Agreement are disfavored by courts. *See, e.g.*, *Cintech Indus. Coatings, Inc. v. Bennett Indus, Inc.*, 85 F.3d 1198, 1203 (6th Cir. 1996) ("we note the disfavored status of most favored nation clauses because they often inhibit compromise and settlement . . . . This effect can be particularly disruptive in the orderly disposition of such complex litigation as antitrust class actions, which by

---

[9] Non-settling Defendants have standing to object to settlements reached with other defendants that will legally prejudice them or their rights. *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998 (9th Cir. 2005); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 582 (9th Cir. 1987). Legal prejudice includes a settlement that "strip[s] [a non-settling defendant] of a claim or cause of action . . ." *Id.* at 583 (citations omitted). Paragraph 34 of the proposed Depo Settlement Agreement purports to strip TYC and Genera of their right to settle under terms that reflect their unique (among all Defendants) access to ACPERA's liability limiting provisions. Indeed the MFN goes even further and requires that in order to settle for a lower percentage than Depo's settlement any "settling plaintiff" would have to contest TYC and Genera's access to ACPERA liability limiting benefits -- regardless of whether TYC and Genera fulfill ACPERA's requirements. Depo Settlement Agreement Paragraph 34 says: "this [reduction] provision shall not apply in the event…. (c) that the Court, at the time of imposing judgment or otherwise determining liability and damages, grants TYC's request for detrebling pursuant to ACPERA over the objections of Class Counsel." In other words, the only way in which the MFN in paragraph 34 can justify a settlement with TYC and Genera lower than the 5.6% of sales at which Depo settled is if (1) the case against TYC and Genera has gone to trial and the court is imposing judgment or determining liability and damages, and (2) plaintiffs have contested TYC's and Genera's access to ACPERA's benefits before the Court -- and lost. Thus, under the propsoed Depo Settlement Agreement's MFN, TYC and Genera's unique situation with respect to their potentially limited liability cannot be considered in any pre-trial settlement. As a result, TYC and Genera are denied the full benefits conferred on them under ACPERA as an amnesty applicant in the DOJ's Corporate Leniency Program. This attempt to deny TYC and Genera statutorily granted benefits confers standing on TYC and Genera to object to the proposed Depo Settlement Agreement.

7

their nature involve multiple defendants"); *see also In re Chicken Antitrust Litig.*, 560 F. Supp. 943 (N.D. Ga. 1979) (striking most favored nation clauses from antitrust settlement agreements) (citations omitted).

The Manual for Complex Litigation (Fourth) §13.23, further remarks on the problems caused by MFN clauses:

> Such clauses have several drawbacks: (1) the potential liability under them is indeterminate, making them risky; (2) the additional recovery they may produce for some plaintiffs without any effort by their attorneys makes it difficult to fix fees; and (3) the factors that induce parties to settle with different parties for different amounts, such as the time of settlement and the relative strength of claims, are nullified. Such clauses can provide an incentive for early settlement as well as an obstacle to later settlements. To limit their prejudicial impact, such clauses should terminate after a specified length of time (to prevent one or more holdouts from delaying final implementation), impose ceilings on payments and allow flexibility to deal with changed circumstances or with parties financially unable to contribute proportionately. *The judge may have to consider voiding or limiting them if enforcement becomes inequitable. . . .*

(emphasis added).

The MFN in the proposed Depo Settlement Agreement here is even more pernicious than the one rejected in *In re Chicken Antitrust*. In that case, the court struck down MFN agreements contained in settlement agreements with financially stronger defendants because it would impose a minimum settlement scale on their

economically weaker competitors.  *In re Chicken Antitrust Litig.*, 560 F. Supp. at 947.   The same situation exists here.   Depo – the financially strongest firm among all the Defendants – in agreeing to pay 5.6% of sales, is attempting to inflict via the MFN provision the most economic harm possible on its non-settling competitors who are in far weaker financial condition than Depo, and to punish TYC and Genera specifically for seeking amnesty and cooperating with the DOJ's investigation.[10]

Second, the MFN is unfair and unreasonable because it suffers from several of the drawbacks indentified in the Manual for Complex Litigation. It prevents settlements with non-settling Defendants on more favorable terms as to "amount, time of payment or opt out rights" (without extending those more favorable terms to Depo in the form of a refund).  Depo Settlement Agreement at ¶34.  It has none of the limitations in scope and duration identified in the Manual for Complex Litigation: it does not terminate after a specified length of time, it does not impose a ceiling on payments, and it does not allow flexibility to deal with changed circumstances or with parties financially unable to contribute proportionately.  *See* Manual for Complex Litigation (Fourth) §13.23.

Moreover, the MFN at issue here is unfair and unreasonable because it prevents future settlements from distinguishing between the relative strength of claims and the time of reaching settlement.  Finally, the MFN's use of particular sales figures in Paragraph 34 of the Depo Settlement Agreement to measure Defendant's purported sales during the class period is also prejudicial because the figures have not been demonstrated to be accurate and are based on numerous

---

[10] Depo's current market capitalization is almost $10 billion Taiwanese dollars while TYC's market capitalization is less than 40% of Depo's. *See* http://www.reuters.com/finance/stocks/overview?symbol=6605.TW; http://www.reuters.com/finance/stocks/overview?symbol=1522.TW.  Prior to the hearing on preliminary approval, TYC and Genera will present additional evidence to the Court of the disparity in financial condition between Depo on the one hand, and TYC and Genera, on the other.

9

presumptions and extrapolations.  Pegging the non-settling Defendants' future settlements, if any, to Plaintiffs' speculative view of Defendants' sales is improper and inequitable.  For all these reasons the Court should void the MFN in the proposed Depo Settlement Agreement.

### C.   The Plaintiffs' Secret "Side Agreement" Must be Disclosed to Prospective Class Members and Non-Settling Defendants

Footnote three on page six of Plaintiffs Memorandum in support of the Motion says "there is a side letter agreement entered into in conjunction with the Depo Settlement Agreement that is being submitted in camera to the Court." Plaintiffs refused the non-settling Defendants' request that Class Counsel reveal the contents of the side letter agreement so that TYC and Genera can determine whether the side letter agreement may create any actual or potential legal prejudice to TYC and Genera.  *See* Lang Decl. at ¶ 5, Exh. B

Federal Rule of Civil Procedure 23(e)(2):

> requires parties seeking approval of a settlement . . . to file a statement identifying any agreement made in connection with the settlement . . .   [because]   related undertakings that, although seemingly separate, may have  influenced the terms of the settlement by trading away possible advantages        for the class in return for advantages for others.  Doubts should be resolved  in favor of identification.

2003 Advisory Committee Notes.   Plaintiffs' failure to disclose the contents of the side agreement is a contrary to the spirit and purpose of Rule 23(e)(2).  The Manual for Complex Litigation § 13.23 (4th ed. 2011) also makes clear that the parties are obligated to make full disclosure of all terms and understandings, including any side agreements when submitting settlements for judicial approval.  The settling parties may request that certain terms not be disclosed to other parties, but must

justify the request to the court.  *See, e.g.*, *In re Braniff, Inc*., 1992 WL 261641, *5 (Bkrtcy. M.D. Fla. 1992) (parties must disclose to court and, unless good cause shown, other parties, all agreements settling or limiting liability, whether "formal or informal, absolute or conditional").

Here, the plaintiffs have not established good cause for submitting the Depo Settlement Agreement's secret side agreement *in camera*, where neither class members nor non-settling Defendants can consider it in deciding whether to accept or oppose the approval of the Depo Settlement Agreement.  Plaintiffs should be required to describe the contents of or file the side agreement.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should reject the proposed Depo Settlement Agreement, and require that plaintiffs disclose the secret side agreement related to the Depo Settlement Agreement.

Dated: September 5, 2011

By:   /s/ Thomas J. Lang
Peter E. Halle
Thomas J. Lang
MORGAN LEWIS & BOCKIUS
1111 Pennsylvania Avenue N.W.
Washington, DC 20004-2541
Telephone:   +1-202-739-3000
Facsimile:     +1-202-739-3001

Attorneys for Defendants
TYC BROTHER INDUSTRIAL CO., LTD.
and GENERA CORPORATION