# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 09 MDL 2007-GW(PJWx) | Date | January 12, 2012 |
|---|---|---|---|
| Title | *In Re: Aftermarket Automotive Lighting Products Antitrust Litigation* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Pat Cuneo | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jay L. Himes | Brian M. Hom |
| Arthur Bailey, Jr. | Peter Halle |
| Thomas R. Merrick | Shari M. Wollman |
| Jason Hartley | Aaron A. Kahn |
| Howard J. Parker | Kenneth B. Julian |
| | Joanna Rosen |
| | Peter J. Carney |
| | William C. Hsu |

**PROCEEDINGS:**    **DEFENDANTS EAGLE EYES TRAFFIC INDUSTRIAL CO., LTD. AND E-LITE AUTOMOTIVE, INC'S MOTION TO STAY AND/OR FOR PROTECTIVE ORDER (filed 12/12/11)**

**INTERVENOR UNITED STATES' MOTION FOR PROTECTIVE ORDER (filed 12/21/11)**

Court hears oral argument. The tentative circulated and attached hereto, is adopted as the Court's final ruling. Defendants Eagle Eyes Traffic Industrial Co., Ltd. And E-lite Automotive, Inc.'s Motion to Stay and/or for Protective Order is **GRANTED IN PART.** The Court grants a full stay of these civil proceedings through July 12, 2012. Defendant's Eagle Eyes Traffic Industrial Co., Ltd.'s Motion for Protective Order and the Intervenor United States' Motion for Protective Order, are deemed **MOOT.**

A Status Conference is set for **July 5, 2012 at 8:30 a.m.** Parties may appear telephonically provided that notice is given to the clerk by July 2, 2012. The Post-Mediation Status Conference set for January 30, 2012 is **taken off-calendar.**

|  | : | 15 |
|---|---|---|
| Initials of Preparer | JG | |

*In re Aftermarket Automotive Lighting Products Antitrust Litigation*, Case No. 2:09-ml-02007
Tentative Rulings on: (1) Defendants Eagle Eyes Traffic Industrial Co., Ltd., and E-Lite
        Automotive, Inc.'s Motion to Stay and/or for Protective Order, and (2) Intervenor United
        States' Motion for Protective Order

## I. Background

      Before the Court is Defendants Eagle Eyes Traffic Industrial Co., Ltd. ("Eagle Eyes") and
E-Lite Automotive, Inc.'s ("E-Lite") (collectively, "Defendants") motion for: (1) an order staying
this case for six (6) months, or until the conclusion of the pending criminal case against Eagle
Eyes, E-Lite, and Eagle Eyes' alleged Chairman, Yu-Chin Lin ("Chairman Lin"), and its alleged
Vice-Chairman, Homy Hsu ("Mr. Hsu") in *United States v. Homy Hong-Ming Hsu*, 11-cr-00488
RS (N.D. Cal. Jul. 11, 2011) (the "Criminal Proceedings"), with a trial date currently set for June
18, 2012; and/or (2) a protective order that any deposition of Eagle Eyes take place, if at all, at a
mutually agreed upon place and time in Taiwan.

      The Direct Purchaser Plaintiffs ("DDPs") oppose the Defendants' motion in full.
Defendants TYC Brother Industrial Co. Ltd. ("TYC") and Genera Corporation ("Genera") do not
oppose Eagle Eyes and E-Lite's motion for a stay and/or protective order. Docket No. 405.
Defendant Depo Auto Parts Industrial Co. Ltd. ("Depo") and Maxzone Vehicle Lighting Corp.
("Maxzone") do not oppose Eagle Eyes and E-Lite's motion as long as it does not affect the
schedule for consideration of the opt-out and settlement approval process between Depo,
Maxzone, and DDPs; and it appears undisputed that the motion to stay would not affect those
matters. Docket No. 399. Likewise, Defendant Sabry Lee, Inc. ("Sabry Lee") does not oppose
the motion for stay as it appears undisputed that the motion will not affect the pending schedule
for final approval of the settlement between it and the DDPs. Docket No. 401.

      Also before the Court is Intervenor United States Department of Justice Antitrust
Division's ("United States" or the "government") motion for a protective order staying the
depositions of Ron Breuer, Larry Capitano, Orian Chang, Andrew Chen, Galen Chen, Janet Chu,
David Ho, Polo Hsu, Shiu-Min Hsu, Shirley Scott, Johnson Tsai, and C.C. Wu until ten days
after the trial of Eagle Eyes, E-Lite, and Chairman Hsu in the Criminal Proceedings or until ten
days after the Criminal Proceedings are otherwise concluded for all three parties, whichever
occurs first. The DDPs oppose the government's motion. Defendants also oppose the motion,
arguing that a full stay as briefed in their motion is instead necessary.

      By the Amended Consolidated Class Action Complaint ("Complaint") in the civil
proceedings filed on July 26, 2010, the DDPs allege that, starting in July 2001 and continuing
through early 2009, defendants Eagle Eyes, E-Lite, TYC, Genera, Depo, and Maxzone and their
co-conspirators "entered into a continuing agreement, understanding, and conspiracy in restraint
of trade to artificially raise, fix, maintain, and/or stabilize prices for Aftermarket Automotive
Lighting Products in the United States . . . in violation of Section 1 of the Sherman Act (15
U.S.C. § 1)." Compl. ¶ 110. While not named as defendants in the civil proceedings, Chairman
Lin and Mr. Hsu are identified as principal agents of the alleged conspiracy. *Id.* ¶ 26.

      In February 2009, a federal grand jury was empaneled in the Northern District of

California to investigate the same alleged criminal antitrust violations by all defendants that are set forth in the Complaint. *Id.* ¶ 87. As a result, the government intervened in these civil proceedings and obtained a stay of discovery on multiple occasions, the last stay which expired on March 1, 2010. Docket Nos. 85, 196-2 at Ex. E. Defendants Eagle Eyes and E-Lite also previously moved for a limited stay in this matter on October 28, 2010, pertaining to the depositions of Chairman Lin, Mr. Hsu, Ching Tsung Lai, and Shih Chi Gary Lin based on the continuing grand jury investigation which Defendants asserted prejudiced their ability to respond to DDPs' motion for class certification. Docket No. 196. The Court denied that motion in part because none of the individuals had yet been indicted. Docket No. 217. Chairmen Lin was then deposed in this case on November 30, 2010, and invoked the Fifth Amendment in response to all substantive questions. Declaration of Joanna Rosen in Supp. of Defs.' Mot. ("Rosen Decl."), ¶ 10. On December 2, 2010, Mr. Hsu was also deposed in this case and likewise invoked the Fifth Amendment in response to questions. *Id.*

As a result of the government's criminal investigation, on July 19, 2011, the government indicted Mr. Hsu for violating the Sherman Act, 15 U.S.C. § 1, *United States v. Homy Hong-Ming Hsu*, 11-cr-00488 RS (N.D. Cal. Jul. 11, 2011). *Id.*, Exh. A (Indictment). On November 30, 2011, the government filed a First Superseding Indictment ("FSI") adding Chairman Lin, Eagle Eyes, and E-Lite as defendants and co-conspirators in violation of the Sherman Act. *Id.*, Exh. B. The FSI alleges that Eagle Eyes, E-Lite, Chairman Lin, Mr. Hsu, and "other coconspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition for aftermarket auto lights, which began at least as early as July 2001 and continued until at least as late as September 2008 . . . by agreeing to fix the prices of aftermarket auto lights sold to customers in the United States and elsewhere." FSI ¶ 2.

Per the government's criminal investigation, a number of other entities and individuals have already pleaded guilty to the aftermarket auto lights price-fixing conspiracy. For example, the former President and CEO of Maxzone and the former Executive Vice President of Sabry Lee have pleaded guilty. The corporations Sabry Lee and Maxzone have also pleaded guilty. Gov't Mot., Docket No. 404 at 3:17-28. Declaration of Kelsey Linnett in Supp. of Gov't's Mot. ("Linnet Decl."), ¶ 12. The government's auto lights investigation began when TYC and Genera sought leniency for violation of the Sherman Act and entered into a Conditional Leniency Agreement with the government. *Id.* ¶ 6. The government represents that "[a]ll individuals and companies identified to date as targets of the government's criminal investigation into price fixing in the aftermarket auto lights industry have now either been charged or have reached plea or conditional leniency agreements with the government." *Id.* ¶ 3.

The current scheduling order in this case has a discovery cutoff date of February 10, 2012, with a jury trial set for September 18, 2012. Docket No. 324.

## II. Analysis

The Court has discretion to stay civil litigation in light of a parallel criminal matter "when the interests of justice seem to require such action." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995) (internal quotations and citation omitted). The decision to stay should be made "in light of the particular circumstances and competing interests involved in the

case." This includes a consideration of the "extent to which the defendant's Fifth Amendment rights are implicated." *Id.* (internal quotations and citation omitted). Additional factors the Court considers include: (1) the interests of the plaintiffs in proceedings expeditiously with the civil litigation and the potential prejudice to the plaintiffs of a delay; (2) the burden that the proceedings may impose on defendants; (3) the convenience of the court in management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. *Id.* at 325.

    A. <u>Defendants Eagle Eyes and E-Lite's Motion</u>

    The moving Defendants make two primary arguments in support of a full stay of these civil proceedings pending the outcome of their criminal case. First, they argue that the Court has the authority to and should stay this case because Eagle Eyes and E-Lite have now been indicted and there is substantial overlap between the criminal and civil cases. Second, they argue that all remaining *Keating* factors warrant a stay.

    For their first argument, they rely on, *inter alia, SEC v. Dresser Indus., Inc.*, 628 F.2d 1368 (D.C. Cir. 1980), where the court noted:

> [T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.

*Id.* at 1375-76. As part of this argument, they note that the civil and criminal cases arise from the exact same set of facts. *See, e.g., McCormick v. Rexroth*, No. 09-48188, 2010 U.S. Dist. LEXIS 35783, *2 (N.D. Cal. Mar. 15, 2010) ("Some courts have gone so far as to recognize the extent of the overlap as the 'most important factor.'"); *Hui Ho'omalu I Ka'Aina v. Kaua'i Island Util. Coop.*, No. 10-00169, U.S. Dist. LEXIS 101948, *14-15 (D. Haw. Sept. 24, 2010) (favoring stay "where both actions arise from the same nucleus of fact"). While the issuance of an indictment and extent of the overlap between the civil and criminal cases pertain to the related burden that will be placed on a defendant's Fifth Amendment rights and Defendants here, as corporations have no such rights, they also point out that they nonetheless have standing to raise these concerns because their civil defense will be prejudiced by the Fifth Amendment rights and resulting unavailability of Chairman Lin and Mr. Hsu to Defendants' civil defense. *Cf. Stamile v. County of Nassau*, No. 10-2632, 2011 U.S. Dist. LEXIS 18697, *11-12 (E.D.N.Y. Jan 31, 2011).

    Regarding the remaining *Keating* factors, Defendants argue that the burden and prejudice on them warrant a stay because (1) they will have to defend simultaneously in two forums identical charges; (2) their civil defense will be prejudiced by the Fifth Amendment invocations and resulting unavailability of key officers and co-conspirators, in particular Chairman Lin and Mr. Hsu as stated above; and (3) they will be prejudiced by the government's use of the broader

civil discovery materials to aid its criminal prosecution, especially considering the government - through the protective order motion currently before the Court - seeks to block Defendants' access to certain key witnesses to the civil proceedings pending the Criminal Proceedings at the same time that the government has already sought civil discovery documents from the DDPs. Defendants also argue that the interests of third parties, in particular, the constitutional rights of non-parties Chairman Lin and Mr. Hsu, warrant a stay. Moreover, they assert that expeditious resolution of the criminal matter serves the public interest and the efficient use of judicial resources, considering the outcome of the criminal proceedings could simplify the issues in the civil case. Further, Defendants posit that any inconvenience to the DDPs does not outweigh the prejudice to Defendants.

The DDPs respond that nothing of significance has changed since the Court initially denied Defendants' motion for a limited stay in November 2010, and thus the Court should not change course here now and grant a full stay. First, they argue that any resulting prejudice to Defendants going forward in the civil case as a result of Chairman Lin's or Mr. Hsu's invocations of the Fifth Amendment is specious, especially because depositions of those individuals in which they relied on the Fifth Amendment have already taken place. Second, they argue that the government has no reason to (and Defendants have not shown that it will) misuse civil discovery in the criminal matter, as it has access to all relevant defendants and witnesses through various plea agreements and leniency agreements. Further, they argue that they will be more prejudiced by any delay of the civil proceedings because this case is more than three years old, and the public interest favors an expeditious litigation of the class action.

On balance, Defendants have the stronger arguments. With the recent issuance of the FSI and the trial in the parallel criminal matter now set for about five months away, the Court would be inclined to grant a full stay of this matter. These new facts distinguish this instant moment from the time at which the Court declined to grant Eagle Eyes and E-Lite's previous request for a limited stay. As such, the Court is inclined to agree with Defendants that the burdens of proceeding with parallel civil and criminal proceedings simultaneously would be substantial, especially considering the extensive overlap of the civil matter with the Criminal Proceedings. Moreover, the fact that both cases involve conspiracy charges means that any stay in the civil matter limited only to the instant moving Defendants will not necessary preclude the production of civil discovery that could be utilized against them in the Criminal Proceedings. *See, e.g.*, Fed. R. Evid. 801(d)(2)(E) (allowing for admissibility of co-conspirator statements). That is, the Court is inclined to favor a full stay at this point. The Court also agrees that judicial resources, as well as the public interest, would be served by an expeditious resolution of the criminal matter that could serve to simplify these civil proceedings. In addition, Plaintiffs have not shown that a five or six month delay will prejudice them in any real way.[1]

But, the Court would not grant an indefinite stay of this matter because it recognizes that, at some point, prejudice to Plaintiffs will result. As a compromise, the Court would be inclined

_____

[1] The trial in the civil matter is set for September 2012. Further, it would appear that, if the government prevails in the Criminal Proceeding, the DDPs' task in this action will be substantially lessened. Conversely, if the government loses its case, the DDPs can learn from its mistakes (assuming that it made any).

to grant a stay of this matter through July 12, 2012. The criminal trial is set to commence on June 18, 2012, and it is represented that it will proceed for three weeks. Rosen Decl. ¶ 9. However, if the Criminal Proceedings are not in fact completed by July 12, 2012, the Court would not be inclined to grant a continued stay of this matter (unless the trial in the Criminal Proceeding has already started). At that stage, Defendants will have to face the possibility of proceeding with both the civil and criminal matters simultaneously. And, of course, if the Criminal Proceedings resolve prior to July 12, 2012, the parties are to notify the Court immediately so that the stay of this matter can be lifted.

Because the Court would grant a full stay of this matter for the time period identified above, it declines to rule yet rule on Defendants' request for a protective order seeking that the noticed deposition of Eagle Eyes in Los Angeles be ordered to instead take place in Taiwan on a mutually convenient, to-be-determined date.

### B. Government's Motion

Under *Keating*, the government seeks a stay of the depositions of its material witnesses identified above in order to prevent defendant Eagle Eyes and E-Lite from obtaining under the liberal civil discovery rules information from those witnesses for use in the criminal trial. That is, just as Eagle Eyes and E-Lite are suspicious of the government's potential misuse of civil discovery in the Criminal Proceedings, so too is the government suspicious of Defendants. The government seeks to have the Court stay those depositions until ten days after the conclusion of the criminal trial or until ten days after the Criminal Proceedings otherwise conclude. Because the Court would grant Defendants Eagle Eyes and E-Lite's motion for a full stay, that ruling primarily takes care of the government's motion and subsumes their request for relief. In addition, the Court would apply the same time limits on the government's stay of the identified depositions as set forth above with respect to the Defendants' requested stay. The government has presented no compelling reason why the stay should extend beyond July 12, 2012, and, as the Court stated above, it is not inclined to indefinitely suspend the resolution of the civil matter if the Criminal Proceedings do not in fact resolve in an expeditious manner.

### III. Conclusion

For the foregoing reasons, the Court would grant a full stay of these civil proceedings through July 12, 2012. However, it would not be inclined to grant a further stay either to Defendants Eagle Eyes and E-Lite or to the government related to the depositions of its identified material witnesses past that date (unless the criminal trial has already started). In light of the stay, the Court refrains from ruling on Defendants' request for a protective order vis-a-vis the location of Eagle Eyes' deposition. Defendants' related request for a protective order pertaining to the location of the DDPs' deposition of Eagle Eyes is rendered moot at this time. In addition, if the Criminal Proceedings fully resolve prior to July 12, 2012, the parties are to notify the Court of that outcome within one week of such resolution so that the stay can be lifted.