STUEVE SIEGEL HANSON, LLP
JASON S. HARTLEY (192514)
JASON M. LINDNER (211451)
550 West C Street, Suite 610
San Diego, CA 92101
Telephone: (619)-400-5822
Fax: (619)-400-5832
hartley@stuevesiegel.com

LABATON SUCHAROW LLP
JAY L. HIMES, (*Pro Hac Vice*)
140 Broadway
New York, NY 10005
Telephone: (212)-907-0200
Facsimile: (212)-818-0477
JHimes@labaton.com

Co-Lead Counsel for Plaintiffs and the Class

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| In re AFTERMARKET AUTOMOTIVE LIGHTING PRODUCTS ANTITRUST LITIGATION | No. 2:09-ml-02007-GW(PJWx)<br><br>DECLARATION OF JAY L. HIMES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT WITH DEFENDANTS EAGLE EYES TRAFFIC INDUSTRIAL CO. LTD. AND E-LITE AUTOMOTIVE, INC.<br><br>Date:        Aug. 26, 2013<br>Time:        8:30 a.m.<br>Courtroom:   10<br>Hon. George H. Wu |

I, Jay L. Himes, declare as follows:

1.      I am a partner of the firm of Labaton Sucharow LLP, Co-Lead Counsel for Plaintiffs and the Class in this action.  I make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement

with Defendants Eagle Eyes Traffic Industrial Co. Ltd. and E-Lite Automotive, Inc
(collectively, "Eagle Eyes").

2. Plaintiffs' Co-Lead Counsel began arm's length settlement
negotiations with Eagle Eyes in June 2010, and our efforts to negotiate a settlement
continued through April 2013. For much of that period, the spread between the
settlement numbers offered by Plaintiffs and Eagle Eyes was considerable.
Negotiations between the parties became more productive earlier this year as a
result of a scheduled post-mediation court conference, set for March 18, 2013 in
the Court's October 29, 2012 Order. Dkt. No. 510. As the date for that post-
mediation conference approached, I had a series of phone conversations and emails
with counsel for Eagle Eyes in which settlement was discussed. Although the
divide between the two sides narrowed, no agreement was reached.

3. On March 18, 2013, the parties appeared in Court at the post-
mediation conference. At that point, no mediation had been conducted. The Court
extended the mediation period, and directed that the Honorable Suzanne H. Segal
preside over the mediation.

4. Magistrate Judge Segal held two pre-mediation conference calls with
counsel for Plaintiffs and Eagle Eyes, during which various issues and positions
were presented. Magistrate Judge Segal also directed certain disclosures in aid of
mediation, and the parties exchanged mediation statements before appearing in
person at the April 30, 2013 mediation session.

5. At the mediation, the parties reached an agreement in principle. The
terms of the agreement were dictated on the record, and were later memorialized as
the proposed settlement that is the subject of Plaintiffs' preliminary approval
motion.

6. Attached as Exhibit A is a true and correct copy of the Settlement
Agreement between Plaintiffs and Eagle Eyes. Briefly, the proposed settlement
calls for the payment of a $3 million cash settlement and Eagle Eyes' cooperation

1  with Plaintiffs' continued prosecution of this action against the remaining TYC

2  defendants.

3       7.    The proposed settlement is the product of extensive negotiations

4  between the parties.  The negotiations were at all times hard-fought and at arm's

5  length.  They took place over an extended period and included not only telephone

6  conference calls and email communications, but also the court-sponsored

7  mediation.  During these negotiations, Plaintiffs' Co-Lead Counsel zealously

8  advanced Plaintiffs' positions and were fully prepared to continue to litigate rather

9  than to accept a settlement that was not in the best interests of the Class.

10       8.    Plaintiffs' Co-Lead Counsel conducted a thorough investigation of the

11  facts alleged; reviewed and analyzed more than a million pages of documents

12  produced by Defendants; and participated in 47 depositions, including 19 taken in

13  Taiwan.  The parties also participated in negotiations where the strengths and

14  weaknesses of their respective claims and defenses were debated.  Thus, at the time

15  of settlement, Plaintiffs' Co-Lead Counsel had a full understanding of the strengths

16  and weaknesses of the Class' claims, as well as the difficulties that they would

17  have faced in obtaining a more favorable result through continued litigation.

18       9.    Attached as Exhibit B is a true and correct copy of Plaintiffs'

19  proposed Plan of Administration and Distribution, which governs administration of

20  the notice program and distribution of settlement proceeds to Class Members in

21  this action.  The Notice is similar to program used in the Depo and Sabry Lee

22  Settlements:  it will inform Class Members of the material terms of the Settlement,

23  all applicable deadlines, and their rights to object and appear at the Final Approval

24  hearing.

25       10.    The only notable difference in the notice program concerns the

26  submission of claim forms.  As the Notice states, Class Members who submitted a

27  claim form and received a payment in connection with the Depo and Sabry Lee

28  Settlements ("Existing Claimants"), will not need to submit another claim form.

1  Instead, the earlier claim form will be used to determine each Existing Claimant's
2  share of the Eagle Eyes Settlement.  Class Members who did not submit a claim
3  form in connection with the Depo and Sabry Lee Settlements, or who submitted a
4  claim form but did not receive a payment, and who wish to participate in the
5  proposed settlement must, however, submit a timely claim form.  Class Members
6  who submit such claims in connection with this Settlement are referred to in the
7  Notice as "Additional Claimants."  The Claims Administrator will review the
8  claims of all Additional Claimants.  Those Additional Claimants whose claims the
9  Claims Administrator approves, together with the Existing Claimants, are referred
10 to in the Notice, collectively, as "Authorized Claimants."  All Authorized
11 Claimants will be entitled to receive a share of the proposed settlement.  Because
12 the Court has certified a Class, if the Court approves the proposed settlement, all
13 Class Members will be bound, regardless of whether or not the Class Members
14 submit claim forms.

15          11.     The Eagle Eyes Settlement will be paid in three $1,000,000
16 installments.  The first installment will be paid into escrow on or before 10 days
17 from the date that the Court issues an order preliminarily approving the proposed
18 settlement.  Assuming final approval, the two remaining $1,000,000 installments
19 will be paid on the yearly anniversaries of the date the first installment was paid.
20 Plaintiffs propose to distribute the Settlement Fund as the undivided installments
21 are received.

22          I declare under penalty of perjury under the laws of the United States of
23 America that the foregoing is true and correct.

24          Executed this 25th day of July, 2013 in Waukesha, Wisconsin.

25

26

27  _____

28  JAY L. HIMES

# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and between Defendants Eagle Eyes Industrial Co. Ltd. and E-Lite Automotive, Inc. (collectively referred to as "Eagle Eyes") on the one hand, and the "Settling Plaintiffs" (as defined in paragraph 2 below) on the other hand.

WHEREAS, the Settling Plaintiffs allege that Eagle Eyes participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of Aftermarket Automotive Lighting Products (as defined in paragraph 1 below) at artificially high levels and to restrict output of Aftermarket Automotive Lighting Products in violation of Section 1 of the Sherman Act, 15 U.S.C. section 1; and

WHEREAS, the Settling Plaintiffs have conducted an investigation into the facts and the law regarding the claims in the action entitled IN RE AFTERMARKET AUTOMOTIVE LIGHTING PRODUCTS ANTITRUST LITIGATION, 09-ML-2007 GW PJWx (C.D. Cal.) (the "Action") and believe that their claims are valid, but nevertheless recognize that there are material litigation risks associated with pursuing those claims and, therefore, have concluded that resolving their claims against Eagle Eyes according to the terms set forth below is in the best interest of the Settling Plaintiffs; and

WHEREAS, Eagle Eyes, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Eagle Eyes, based on the allegations of the Action, as more particularly set out below;

WHEREAS, Eagle Eyes and the Settling Plaintiffs have negotiated all of the terms and conditions of this Agreement at arm's length and all terms, conditions,

and exhibits in their exact form are material and necessary to this Agreement and have been relied upon by the parties in entering into this Agreement.

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to Eagle Eyes on the following terms and conditions, and incorporating the preceding clauses:

**A.   Definitions.**

1.     For purposes of this Agreement, "Aftermarket Automotive Lighting Products" is defined as any and all direct purchases of aftermarket automotive lighting products, including such products as headlamps and bulbs, parking, tail and interior lights, spot lights, fog lights and auxiliary lights, but excluding the products identified in Appendix A of the Amended Consolidated Class Action Complaint (referred to herein as "ACC").

2.     For purposes of this Agreement, "Settling Plaintiffs" is defined as Motoring Parts International, Inc., Sioux Plating Co., and all natural persons and entities that purchased Aftermarket Automotive Lighting Products from any of the Defendants, in the United States and its territories and possessions between July 29, 2001 and February 10, 2009 (the "Class").  Excluded from this definition are all parties named as Defendants in the Action, and their parents, subsidiaries, and affiliates; all governmental entities; any judicial officer presiding over the Action and the members of his/her immediate family and judicial staff; and all natural persons or entities that purchased only products identified in Appendix A of the ACC.

3.     For purposes of this Agreement, the terms "Defendant" or "Defendants" shall mean, respectively, each and all named defendants in the ACC.

4.     "Releasees" shall refer only to Eagle Eyes, and to all of its respective past and present, direct and indirect, parents, subsidiaries, related entities and affiliates; the predecessors, successors and assigns of Eagle Eyes; and each and all of the present and former principals, partners, officers, directors, investors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

5.     "Releasors" shall refer to the Settling Plaintiffs and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, corporate parents, subsidiaries, divisions, related entities, affiliates, corporate partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators, and assigns of any of the foregoing.

6.     The "Settlement Fund" shall refer to the payment to be made by Eagle Eyes pursuant to this Agreement, plus all accrued interest thereon.

7.     "Co-Lead Counsel" shall refer to the following counsel for Settling Plaintiffs:

> Jason S. Hartley
> Stueve Siegel Hanson LLP
> 550 West C Street, Suite 610
> San Diego, CA 92101
>
> Bonny E. Sweeney
> Robbins Geller Rudman & Dowd LLP
> 655 West Broadway, Suite 1900
> San Diego, CA 92101
>
> Michael P. Lehmann
> Hausfeld LLP
> 44 Montgomery Street, Suite 3400
> San Francisco, CA 94104
>
> Jay L. Himes
> Labaton Sucharow LLP
> 140 Broadway
> New York, NY 10005

**B.**     <u>**Approval of this Agreement and Dismissal of Claims Against Eagle Eyes.**</u>

8.     The Settling Plaintiffs and Eagle Eyes (together, the "Settling Parties"), and the Settling Parties' counsel, respectively, shall use their best efforts to effectuate this Agreement and its purpose, and secure the prompt, complete, and final dismissal with prejudice of the Action as to Releasees, but not as to any party, person, or entity that is not a Releasee.

9.     On or after June 29, 2013,  Settling Plaintiffs shall submit to the Court a motion for preliminary approval of the settlement and a motion by Settling Plaintiffs' counsel for attorneys' fees and costs to be paid from the Settlement Fund in the manner described in Paragraph 27 below.  The motion for preliminary approval shall include a proposed plan for the sending of notice to Settling Plaintiffs within fifteen (15) days after an order of preliminary approval is entered, and establishing a period of forty-five (45) days from the giving of such notice within which any member of the Class may: (a) object to the Agreement, or (b) object to Settling Plaintiffs' counsel's request for fees and costs.  The motions for preliminary approval and for attorneys' fees and costs shall also request that any hearing on final approval of the settlement and any determination on the request for fees and costs be set for no earlier than fifty-five (55) days from the final date for serving objections and that any reply briefs on such motions be filed 14 days prior to that hearing.  In compliance with the notification provision of the Class Action Fairness Act (28 U.S.C. § 1715), within ten (10) days after the motion for preliminary approval is filed, Eagle Eyes shall cause notice of this proposed settlement to be provided to the Attorney General of the United States, and the attorneys general of each state or territory in which a Class Member resides.

10.     The Settling Parties agree that, subject to Court approval, notice of this settlement shall be directed to Settling Plaintiffs as defined above.  Eagle Eyes

1   is not responsible for paying any notice or claims administration costs except as

2   those costs are paid from the Settlement Fund; and to the extent that notice, claims

3   administration, or settlement administration costs are paid from the Settlement

4   Fund, pursuant to a notice and claims administration plan approved by the Court,

5   under no circumstances will such expenditures be refunded to Eagle Eyes.  To the

6   extent practicable, notice to the Settlement Class shall be made by U.S. Mail.  The

7   motion for approval of the form(s) of notice and method(s) of disseminating notice

8   shall recite and ask the Court to find that any notice of settlement, whether by U.S.

9   Mail, publication or otherwise, constitutes valid, due and sufficient notice,

10  constitutes the best notice practicable under the circumstances, and complies fully

11  with the requirements of Federal Rule of Civil Procedure 23 and any other

12  applicable law.

13          11.     The Settling Parties shall jointly seek entry of an order and final

14  judgment, the text of which the Settling Parties shall agree upon.  The terms of that

15  order and final judgment will include, at a minimum, the substance of the

16  following provisions:

17          a       approving finally this settlement and its terms as being a fair,

18  reasonable and adequate settlement as to the Settling Plaintiffs within the meaning

19  of Rule 23 of the Federal Rules of Civil Procedure or other applicable law and

20  directing its consummation according to its terms;

21          b       as to Eagle Eyes, that the Action be dismissed with prejudice

22  and, except as provided for in this Agreement, without recovery of attorneys' fees

23  and/or costs from Eagle Eyes;

24          c       reserving exclusive jurisdiction over this settlement and this

25  Agreement, including the administration and consummation of this settlement, to

26  the United States District Court for the Central District of California;

27

28

1          d       determining under Federal Rule of Civil Procedure 54(b) that

2    there is no just reason for delay and directing that the judgment of dismissal as to

3    Eagle Eyes be finally entered; and

4          e       approving the payment of attorneys' fees, costs and service

5    awards as awarded by the Court out of the Settlement Fund.

6          12.      Subject to the provisions of paragraph 27 below, this Agreement shall

7    become final when the Court has entered an order and final judgment approving

8    this Agreement under Federal Rule of Civil Procedure 23(e) and/or applicable state

9    laws and a final judgment dismissing the Action with prejudice as to Eagle Eyes

10   against the Settling Plaintiffs and one of the following  occurs: (a) if an appeal is

11   taken, (i) the date of final affirmance on appeal of the order and final judgment, the

12   expiration of the time for a petition for or a denial of a writ of certiorari to review

13   the order and final judgment and, if certiorari is granted, the date of final

14   affirmance of the order and final judgment following review pursuant to that grant;

15   or (ii) the date of final dismissal of any appeal from the order and final judgment or

16   the final dismissal of any proceedings on certiorari to review the order and final

17   judgment; or (b) if no appeal is filed, the expiration date of the time for the filing

18   or noticing of any appeal from the order and final judgment. This Agreement shall

19   be deemed executed as of the last date of signature by Eagle Eyes and Co-Lead

20   Counsel, and Co-Lead Counsel shall give notice to Eagle Eyes within three (3)

21   business days after this Agreement is deemed executed.  Neither the provisions of

22   Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C.

23   §1651, shall be taken into account in determining the above-stated times.  As of the

24   date of execution of this Agreement, the Settling Parties shall be bound by the

25   terms of this Agreement and this Agreement shall not be rescinded or terminated

26   except in accordance with paragraphs 28 of this Agreement.

27         13.      Neither this Agreement (whether or not it should become final) nor

28   the final judgment, nor any and all negotiations, documents, and discussions

associated with such negotiation, shall be deemed or construed to be an admission by, or form the basis of an estoppel by a third party against any Releasees, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by any Releasee, or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed by the Settling Plaintiffs, and evidence thereof shall not be discoverable, or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any action taken to carry out this Agreement by any of the Settling Plaintiffs or Eagle Eyes shall be referred to, offered into evidence, or received in evidence in any pending or future civil, criminal or administrative action or proceeding, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

**C.      Release, Discharge, and Covenant Not to Sue.**

14.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 12 of this Agreement, and in consideration of payment of the Settlement Fund as specified in paragraphs 19, 23, and 26 of this Agreement, and for other valuable consideration, Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settling Plaintiff has objected to the settlement or makes a claim upon or participates in the Settlement Fund), whether directly, representatively, derivatively or in any other capacity that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating in any

way to any act or omission of Releasees (or any of them) concerning the pricing, production, development, or sale of Aftermarket Automotive Lighting Products during the period from July 29, 2001 to February 10, 2009, including claims based on the conduct alleged and causes of action asserted or that could have been asserted, in complaints filed in the Action by the Settling Plaintiffs, including, without limitation, any claims arising under any federal or state antitrust, unjust enrichment, unfair competition, trade practice statutory or common law, and consumer protection law (to the extent that a consumer protection claim would be based on allegations of an antitrust or unfair competition violation) (the "Released Claims"). Releasors shall not, after the date of this Agreement, seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims.  The Settling Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of Aftermarket Automotive Lighting Products purchasers with respect to the claims released in this paragraph.

15.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 12 of this Agreement, and in consideration of payment of the Settlement Fund as specified in paragraphs 19, 23, and 26 of this Agreement, and for other valuable consideration, Releasors shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, whether directly, representatively, derivatively or in any other capacity that Releasees, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, related to, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of Releasors (or

any of them) concerning the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims (the "Releasee-Released Claims"). Releasees shall not, after the date of this Agreement, seek to establish liability against any Releasor based, in whole or in part, upon any of the Releasee-Released Claims, or conduct at issue in the Releasee-Released Claims.  The Releasors contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted on behalf of Aftermarket Automotive Lighting Products purchasers with respect to the claims released in this paragraph.

16.    In addition to the provisions of paragraphs 14 and 15 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

**CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;** or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code.  Each Releasor and Releasee may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of paragraphs 14 and 15 of this Agreement, but each Releasor and Releasee hereby expressly waives and fully, finally, and

forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of paragraphs 14 or 15 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

17.     The release, discharge, and covenant not to sue set forth in paragraphs 14 and 15 of this Agreement do not include respective claims by any of the Releasors or any of the Releasees other than the claims set forth therein and do not include other claims, such as those solely arising out of product liability, contract or warranty claims in the ordinary course of business.

18.     Eagle Eyes agrees to provide reasonable, good faith cooperation to the Settling Plaintiffs by taking steps including: (a) making the appropriate current employees available, and using its best efforts to make appropriate former employees available, for interviews, deposition and trial according to a reasonable schedule, provided, however, that Eagle Eyes shall have no obligation to require cooperation from employees/former employees of Eagle Eyes and/or E-Lite who are currently targets in the Government's criminal antitrust investigation or against whom criminal antitrust charges are currently pending; (b) upon request, providing the last-known contact information for any potentially relevant former employees, (c) providing the last-known contact information for any of the Settling Plaintiffs; (d) using their best efforts to produce at trial in person, by deposition, or by affidavit, whichever is legally necessary, representatives who can testify as to all matters relevant to claims asserted by the Settling Plaintiffs in this Action and who can lay the foundation for admission into evidence of documents prepared or received by Eagle Eyes, or as to which Eagle Eyes is otherwise competent to testify; and (e) providing to counsel for Settling Plaintiffs true and full information regarding the participation of Eagle Eyes and other Defendants in the acts charged

in the Action. If for any reason the Agreement is not finally approved and Settling Plaintiffs pursue a case against Eagle Eyes, Settling Plaintiffs may not use any evidence or information obtained solely from the cooperation provided by Eagle Eyes as part of that agreement (as opposed to any other source) in its prosecution of Eagle Eyes.  The provision of information by Eagle Eyes pursuant to this Agreement shall not be argued by Settling Plaintiffs or deemed a waiver of any of Eagle Eyes' rights including, without limitation, the attorney-client privilege, attorney work product protection, joint defense or any similar protection, privilege, or immunity, all of which are expressly reserved by Eagle Eyes.

**D.**     **Settlement Amount**

19.     Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Eagle Eyes will pay $3,000,000 USD. The $3,000,000 USD will be deposited into the Escrow Account as follows:

a     $1 million USD, paid on or before ten (10) calendar days after the Court files an order granting preliminary approval of this Agreement (the "Trigger Date")

b     $1 million USD, paid on or before the first anniversary of the Trigger Date ("First Anniversary Payment"); and

c     $1 million USD, paid on or before the second anniversary of the Trigger Date ("Second Anniversary Payment").

20.     Security for Settlement Amount.

Eagle Eyes shall provide to Settling Plaintiffs a letter of credit or similarly acceptable instrument guaranteeing payment of the First and Second Anniversary Payments from a reputable domestic or international financial institution having a U.S. presence, subject to the approval of counsel for Settling Plaintiffs, or as the Court may direct.

21.     Escrow Account

1    (a)    The Escrow Account referenced in paragraph 19 will be

2  established at Citibank, N.A., with such bank serving as escrow agent ("Escrow

3  Agent") subject to escrow instructions as agreed by the Settling Parties.  Such

4  Escrow Account and any subsequently established escrow accounts are to be

5  administered under the Court's continuing supervision and control.

6    (b)    The Escrow Agent shall cause the funds deposited in the

7  Escrow Account to be invested in instruments backed by the full faith and credit of

8  the United States Government or fully insured by the United States Government or

9  an agency thereof, or money market funds invested substantially in such

10  instruments, and shall reinvest any income from these instruments and the

11  proceeds of these instruments as they mature in similar instruments at their then

12  current market rates.

13    (c)    All funds held in the Escrow Account shall be deemed and

14  considered to be *in custodia lexis* of the Court, and shall remain subject to the

15  jurisdiction of the Court, until such time as such funds shall be distributed pursuant

16  to this Agreement and/or further order(s) of the Court and only the settlement made

17  by this Agreement becoming final and not subject to further appeal, excepting only

18  as to direct disbursements as may be authorized by the Court to the extent provided

19  in paragraph 21(h).

20    (d)    The Settling Parties agree to treat the Settlement Fund as being

21  at all times one or more "qualified settlement funds" within the meaning of Treas.

22  Reg. § 1.468B-1 and to refrain from taking any action inconsistent with such

23  treatment.

24    (e)    For the purpose of § 468B of the Internal Revenue Code of

25  1986, as amended, and the regulations promulgated thereunder, the "administrator"

26  shall be the Escrow Agent for the Escrow Account and shall promptly take all

27  steps necessary so that the Settlement Fund qualifies as one or more "qualified

28

settlement funds" within the meaning of Treas. Reg. § 1.468B-1.  These steps include, without limitation, the following:

(i)     the Escrow Agent shall timely and properly prepare a statement fulfilling the requirements of Treas. Reg. § 1.468B-3(e) on behalf of Eagle Eyes; and

(ii)     the Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(1)).  Such returns (as well as the election described below) shall be consistent with the provisions of paragraph 21(d).

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund ("Taxes"), (ii) taxes, interest, penalties, or other tax detriments that may be imposed upon Eagle Eyes or any other Releasee with respect to (A) any income earned by the Settlement Fund or (B) the receipt of any payment under this paragraph 21(f)(ii), in each case for any period during which the Settlement Fund does not qualify as one or more "qualified settlement funds" for federal or state income tax purposes ("Tax Detriments"); and (iii) expenses and costs incurred in connection with the operation and implementation of paragraphs 21(d) through 21(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in paragraph 21(e) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Eagle Eyes nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes, Tax Detriments, or the Tax Expenses.  Taxes, Tax Detriments, and Tax Expenses shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the

1   contrary) to withhold from distribution to any claimants authorized by the Court

2   any funds necessary to pay such amounts including the establishment of adequate

3   reserves for any Taxes, Tax Detriments, and Tax Expenses (as well as any amounts

4   that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither

5   Eagle Eyes nor any other Releasee is responsible, nor shall they have any liability,

6   therefore.  Settling Parties agree to cooperate with the Escrow Agent, each other,

7   and their tax attorneys and accountants to the extent reasonably necessary to carry

8   out the provisions of paragraphs 21(d) through 21(g).

9              (h)     If this Agreement does not receive final Court approval, or if

10   for any other reason this Agreement terminates, then all amounts paid by Eagle

11   Eyes into the Settlement Fund shall be promptly returned to Eagle Eyes from the

12   Escrow Account(s) by the Escrow Agent along with any interest accrued thereon

13   less only any expenses incurred with prior Court approval for taxes, class notice,

14   claims administration, or settlement administration or any other Court-approved

15   expenses incurred by the Settlement Fund.

16         22.    In the event the Court decertifies the Class prior to the time when this

17   settlement becomes final as provided in paragraph 12 and the Settlement Funds

18   then in escrow are entitled to be disbursed as provided in paragraphs 21(h), 25 and

19   26 of this Agreement, Plaintiffs and Eagle Eyes shall, within 14 calendar days

20   thereafter, jointly apply to the Court for an Order certifying the Class (as defined in

21   paragraph 2) solely for the purposes of consummating the settlement provided for

22   in this Agreement.  The time period provided in this paragraph shall not be affected

23   in any way by Fed. R. Civ. P. 23(f).

24         23.    Payment of Expenses

25         Eagle Eyes agrees that, subject to Court approval, any costs incurred in

26   providing any notice of the proposed settlement to the Settling Plaintiffs and in

27   claims administration may be paid from the Settlement Fund, which amounts shall

28   not be recoverable by Eagle Eyes in the event that this settlement does not become

final, is terminated by Eagle Eyes, or is rescinded by either party.  After this Agreement becomes final within the meaning of paragraph 12, all court ordered disbursements, including attorneys' fees and litigation costs, may be made from the Settlement Fund.  Other than as set forth in this paragraph 23, neither Eagle Eyes nor any of the other Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including, without limitation, attorneys' fees, fees and expenses of expert witnesses and consultants, and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for class administration and costs.

**E.    The Settlement Fund**

24.    Releasors shall look solely to the Settlement Fund for settlement and satisfaction against Releasees of all Released Claims, and shall have no other recovery against Eagle Eyes or any other Releasee.

25.    After this Agreement becomes final within the meaning of paragraph 12, the Settlement Fund shall be distributed in accordance with plans for direct distributions, *cy pres*, or as otherwise permitted by law, all to be submitted at the appropriate time by the Settling Plaintiffs and approved by the Court.  Neither Eagle Eyes nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to, or shall file any opposition to, the proposed or actual plan(s) for distribution of the Settlement Fund among the Settling Plaintiffs and/or any other person or entity who may assert some claim to the Settlement Fund.

26.    It is contemplated that Settling Plaintiffs' counsel will seek attorneys' fees award(s), reimbursement of costs and expenses (including expert witness fees and expenses), and service awards to the representative plaintiffs.  Eagle Eyes shall take no position on any application for attorneys' fees, reimbursement of costs and expenses or representative plaintiff service awards to the extent that the application

is not inconsistent with that provided for pursuant to paragraph 27.  After the entry

of any order awarding attorneys' fees, reimbursement of costs and expenses, or

representative plaintiff service awards, the Escrow Agent may, pursuant to

paragraph 21, establish and maintain sub-accounts to hold such awards for

payment.

27.     (a)     The procedure for and the allowance or disallowance by the

Court of the petitions for awards of attorneys' fees, the reimbursement of costs and

expenses and any award of service awards to the representative plaintiffs is to be

considered by the Court separately from the Court's consideration of the fairness,

reasonableness and adequacy of this Agreement, and any order or proceeding

relating to the fee application(s) or any appeal from any such order shall not

operate to terminate or cancel this Agreement, or affect or delay the finality of the

judgment approving the settlement.  Except as expressly provided in this

Agreement, neither Eagle Eyes nor any other Releasee under this Agreement shall

have any responsibility for, or interest in, or liability whatsoever with respect to

any payment to counsel for the Settling Plaintiffs of any fee award in the Action.

Neither Eagle Eyes nor any other Releasee under this Agreement shall have any

responsibility for, or interest in, or liability whatsoever with respect to the

allocation among counsel for the Settling Plaintiffs, and/or any other person or

entity who may assert some claim thereto, of any fee award that the Court may

make in the Action.

(b)     Subject only to subparagraphs 27(a) and (c), attorneys' fees and

expenses awarded by the Court shall be payable from the Settlement Fund upon

award, notwithstanding the existence of any filed objections to the settlement, to

any award of attorneys' fees and expenses or to any service award, or to any actual,

or potential for, appeal therefrom, or collateral attack on the settlement or any part

of it, subject to Co-Lead Class Counsel's obligation to make a full repayment to

the Settlement Fund if this Agreement does not become final pursuant to paragraph

12 of this Agreement, if the Court does not enter final judgment provided for in paragraph 12, or if this Agreement is rescinded pursuant to paragraph 28 of this Agreement or to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the fee or cost award is reduced or reversed.

(c)     Plaintiffs shall seek an award of attorneys' fees in the amount of 25% of the Settlement Fund and expenses.  The attorneys fees awarded shall be payable as follows:  (1) upon Eagle Eyes' payment of the first $1,000,000 installment and the Court's entry of final judgment approving this Agreement, no more than 25% of the amount of attorneys' fees awarded by the Court shall be distributed pursuant to paragraph 27(b); and (2) upon Eagle Eyes' payment of the First and Second Anniversary Payments, no more than 25% of each $1,000,000 Payment shall be distributable without further Order of the Court.  Costs shall be distributable as the Court may direct.

## F.     Rescission If This Agreement Is Not Approved or Final Judgment Is Not Entered.

28.     If the Court refuses to approve this Agreement or any material part hereof, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 12 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then within 30 days thereafter, Eagle Eyes and the Settling Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made by the rescinding party to counsel to either Settling Plaintiffs or Eagle Eyes as the case may be.  A modification or reversal on appeal of any amount of the fees for counsel for the Settling Plaintiffs shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

29.     In the event that this Agreement does not become final, then this Agreement shall be of no force or effect (except for this paragraph and paragraph 13) and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account(s), including all interest earned on such accounts, shall be returned forthwith to Eagle Eyes less only disbursements made pursuant to Court order in accordance with this Agreement.  The Settling Parties expressly reserve all of their rights if this Agreement does not become final.  Further, and in any event, the Settling Parties agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with its negotiation, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Eagle Eyes or Releasees, or of the truth of any of the claims or allegations contained in the complaints or any other pleadings filed by the Settling Plaintiffs in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

**G.     <u>Miscellaneous</u>**

30.     This Agreement shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

31.     The Parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in paragraph 13 of this Agreement, appropriate notice (1) of the settlement; (2) of a hearing at which the Court will consider the approval of this Agreement; and (3) that Settling Plaintiffs may be permitted to object to the settlement, will be given to the Settling Plaintiffs.

32.     This Agreement does not settle or compromise any claim by the Settling Plaintiffs against any Defendant or alleged co-conspirator other than Eagle

Eyes and Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by Settling Plaintiffs.

33.     Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement is or may be deemed to be or may be used as an admission of, or evidence of, (i) the validity of any claim or defense; or (ii) the appropriateness or inappropriateness of any class or other representational capacity whether contemporaneously with this Agreement or at any time in the future.

34.     Except as otherwise set forth herein, this Agreement shall not affect whatever rights Releasors or any of them may have (i) to participate in or benefit from any relief or recovery as part of a judgment or settlement in this Action against any other party named as a Defendant (other than Eagle Eyes or a Releasee); or (ii) to assert any claim referred to in paragraph 17 above.

35.     The United States District Court for the Central District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by the Settling Parties.  This Agreement shall be construed according to the laws of the State of California without regard to its choice of law or conflict of laws principles.

36.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by the Settling Plaintiffs shall be binding upon all classes and Releasors.  The Releasees (other than Eagle Eyes which is a party hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

37.     This Agreement may be executed in counterparts by the Settling Plaintiffs and Eagle Eyes, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

38.     Neither the Settling Plaintiffs nor Eagle Eyes shall be considered to be the drafters of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafters of this Agreement.

39.     The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

40.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

41.     The Settling Parties and their counsel agree to do anything reasonably necessary to effectuate the performance of, and uphold the validity and enforceability of, this Agreement.

42.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of the Settling Parties he or she represents, subject to Court approval.

1     Agreed:

2     Dated _____     MANATT, PHELPS & PHILLIPS LLP

3

4                By: _____  AS TO FORM ONLY

5                    MATTHEW P. KANNY

6                    Attorneys for Defendants

7          EAGLE EYES INDUSTRIAL CO. LTD.

8                          AND

9              E-LITE AUTOMOTIVE, INC.

10

11    Dated 6/21/13          LATHAM & WATKINS, LLP

12

13                By: _____  AS TO FORM ONLY

14                    YI-CHIN HO

15                    Attorneys for Defendants

16        EAGLE EYES INDUSTRIAL CO. LTD.

17                         AND

18             E-LITE AUTOMOTIVE, INC.

19

20    Dated: 06.21.2013      _____

21                    Yu-Chu Lin

22                    Chairman, Eagle Eyes Industrial Co. Ltd.

23

24    Dated: Jun. 21, 2013    _____

25                    Andy Yang

26                    Director, E-Lite Automotive, Inc.

27

28

Dated: 6/25/13

_____

Jason S. Hartley

Stueve Siegel Hanson LLP

Dated: _____

_____

Bonny E. Sweeney

Robbins Geller Rudman & Dowd, LLP

Dated: _____

_____

Michael P. Lehmann

Hausfeld LLP

Dated: _____

_____

Jay L. Himes

Labaton Sucharow LLP

1                        Jason S. Hartley

2                        Stueve Siegel Hanson LLP

3

4   Dated: 6/26/13

5                        Bonny E. Sweeney

6                        Robbins Geller Rudman & Dowd, LLP

7

8   Dated: _____

9                        Michael P. Lehmann

10                       Hausfeld LLP

11

12  Dated: _____

13                       Jay L. Himes

14                       Labaton Sucharow LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Jason S. Hartley

2    Stueve Siegel Hanson LLP

3

4  Dated: _____    _____

5    Bonny E. Sweeney

6    Robbins Geller Rudman & Dowd, LLP

7

8  Dated: 6/24/13    _____

9    Michael P. Lehmann

10    Hausfeld LLP

11

12  Dated: _____    _____

13    Jay L. Himes

14    Labaton Sucharow LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                Jason S. Hartley

2                                Stueve Siegel Hanson LLP

3

4     Dated: _____                    _____

5                                Bonny E. Sweeney

6                                Robbins Geller Rudman & Dowd, LLP

7

8     Dated: _____                     _____

9                                Michael P. Lehmann

10                               Hausfeld LLP

11

12    Dated: June 24, 2013              _____

13                               Jay L. Himes

14                               Labaton Sucharow LLP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

## PLAN OF ADMINISTRATION AND DISTRIBUTION

### I.  CLAIMS ADMINISTRATOR

Subject to approval by the District Court, Class Counsel has selected Garden City Group, Inc. to act as Claims Administrator to administer the notice program and distribution of the settlement proceeds to eligible Class Members.

### II.  THE NOTICE PROGRAM

#### A.  Mailed Notice

Notice packets will be sent directly to Class Members identified who have previously been identified from Defendants' records and other available information in connection with Plaintiffs' earlier settlements with Defendants Depo Auto Parts Industrial Co. Ltd., Maxzone Vehicle Lighting Corp., Sabry Lee (U.S.A.) Inc., and Sabry Lee Ltd. (the "Depo-Sabry Lee Settlements").  The Claims Administrator will take steps to verify the accuracy of the mailing addresses and contact names prior to mailing the Notice packets.[1]

#### B.  Publication Notice

Summary Notice will be published once in *Aftermarket Business World* and *Parts and People*.

#### C.  Internet Notice

Banner advertisement will be created, encouraging potential Class Members to "click" on a link to the official website, www.AftermarketAutolightsSettlement.com. These banners will run on the following websites:  Aftermarket News

---

[1] Additional details regarding the Notice program is contained in the Declaration of Jennifer M. Keough, Chief Operating Officer of the Claims Administrator, Garden City Group, filed with the District Court and available at www.AftermarketAutolightsSettlement.com.

1

(www.aftermarketnews.com); Parts and People (www.partsandpeople.com); and Body Shop Business (www.bodyshopbusiness.com).

### D.  Press Release

A press release will be issued through PR Newswire.

### E.  Dedicated Settlement Website

Plaintiffs have previously established a website, www.AftermarketAutolightsSettlement.com, in connection with the Depo-Sabry Lee Settlements.  This site will be updated to include important court documents, Notice packet, and claim form in connection with this Settlement.  The site will also update Class Members as to dates of hearings, deadlines and other important information.

### F.  Telephone Support

The Claims Administrator will maintain a toll-free telephone line, 1-888-404-8013, where Class Members can call for information or if they have questions.

## III.  THE SETTLEMENT FUND

The $3,000,000 cash settlement amount and the interest earned thereon shall be the Settlement Fund.[2]  The Settlement Fund, less taxes, costs, fees, and expenses ("Net Settlement Fund") shall be distributed to Class Members: (a) who submitted claim forms and received a payment in connection with the Depo-Sabry Lee Settlements ("Existing Claimants"); and (b) who did not submit a claim form in the Depo-Sabry Lee Settlements or did not receive a payment, and who submit acceptable claim forms in connection with

---

[2] The Settlement Fund only concerns money paid by Eagle Eyes Traffic Industrial Co. Ltd. and E-Lite Automotive, Inc. (collectively, "Eagle Eyes") in connection with their settlement with Plaintiffs.  The proceeds of Depo-Sabry Lee Settlements have already been distributed to Class Members.  The litigation continues against Defendants TYC Brother Industrial Co. Ltd. and Genera Corp.

this Settlement ("Additional Claimants").  As described further below, Existing Claimants and Additional Claimants are referred to collectively as "Authorized Claimants".

Costs, fees, and expenses include Court-approved attorneys' fees and expenses, the costs of notifying Class Members, including the costs of printing and mailing the Notice, the cost of publishing the Notice, and the costs of claims administration.  Additional information regarding Class Counsel's application to the Court for attorneys' fees and expenses will be posted online at www.AftermarketAutolightsSettlement.com.

## IV.   CLAIM FORMS AND PROCEDURE

The Notice outlines how Class Members are able to receive payment under this Settlement.  As the Notice states, Existing Claimants will not need to submit another claim form.  Instead, information from the claim form from the Depo-Sabry Lee Settlements will be used to determine each Existing Claimant's share of the Eagle Eyes Settlement.

Class Members who did not submit a claim form in connection with the Depo-Sabry Lee Settlements, or who submitted a claim form but did not receive a payment, and who wish to participate in the Eagle Eyes Settlement must submit a timely claim form. The Claims Administrator will review the claims of such Class Members, and if the claim is approved, the Class Member will become an Additional Claimant.  All Additional Claimants, together with all Existing Claimants, will be entitled to receive a share of the Settlement.

Because the Court has certified a Class, if the Court approves of the proposed Settlement, all Class Members will be bound, regardless of whether or not the Class Member submits a claim form.

The claims review process is set out further below.

3

### A.  Class Members Who Are Not Existing Claimants

Plaintiffs previously acquired Defendants' records identifying AALP purchases made by Class Members.  In connection with the Depo-Sabry Lee Settlements, Class Members were sent claim forms that contained the dollar amount of AALPs that the individual Class Member purchased directly from all Defendants.

Now, in connection with the Eagle Eyes Settlement, those Class Members who are not Existing Claimants will similarly be sent a claim form that contains the dollar amount of AALPs that the individual Class Member purchased directly from Defendants.  Where the Class Member believes that the figure matches the purchases he, she or it made directly from Defendants, the Class Member may check a box, sign the claim form and return it to the Claims Administrator for processing prior to the deadline stated on the claim form.

### B.  Where a Claim Form Received Contains an Amount of Purchases that the Class Member to be Different  from the Amount that the Class Member Purchased

Where a Class Member believes that his, her or its own records indicate that the dollar amount of AALPs purchased directly from Defendants is different from the amount listed on the claim form, the Class Member may check a box, attach proof of purchase documentation, sign the form, and return it to the Claim Administrator for review and processing prior to the deadline stated on the claim form.

### C.  No Claim Forms to Existing Claimants

Existing Claimants' earlier claim forms, submitted in connection with the Depo-Sabry Settlements, will be used to determine their share of the Eagle Eyes Settlement. Therefore, the Notice Packet sent to Existing Claimants will not include a claim form.

Existing Claimants will not need to do anything further to participate in the Eagle Eyes
Settlement.

## V.   CALCULATIONS OF CLAIM PAYMENTS

The Settlement calls for Eagle Eyes to pay $3,000,000 cash, in three equal
installments.  The first installment will be paid into escrow on or before 10 days from the
date that the Court issues an Order preliminarily approving the proposed Settlement.
Assuming final approval, the two remaining $1,000,000 installments will be paid on the
yearly anniversaries of the date that the first installment was paid.  Plaintiffs propose to
distribute the Settlement Fund as the individual installments are received unless
otherwise directed by the Court.  Distribution of the Settlement Fund shall proceed as
follows:

### A.  Distributions to Authorized Claimants from the Net Settlement Fund

The Claims Administrator shall determine each Authorized Claimant's pro rata
share of the Net Settlement Fund based upon each Authorized Claimant's volume of
qualifying AALP purchases.  Each Authorized Claimant shall be allocated a pro rata
share of the Net Settlement Fund based on his, her or its volume of qualifying AALP
purchases as compared to the total volume of qualifying AALP purchases of all
Authorized Claimants.  Distributions will be made to Authorized Claimants after the
Court has finally approved the Settlement and after all claims have been processed.

### B.  Distribution of Remaining Balance of Net Settlement Fund (if any)

If there is any balance remaining in the Net Settlement Fund after six (6) months
from the date of the first or the second distribution of the Net Settlement Fund to
Authorized Claimants (whether by reason of tax refunds, un-cashed settlement

5

distribution checks or otherwise), then such balance will added to the next installment of
the Settlement received and will be distributed to Authorized Claimants with that
installment.  If there is any balance remaining in the Net Settlement Fund after six (6)
months from the date of the third distribution of the Net Settlement Fund to Authorized
Claimants, then such balance shall, if feasible, be re-distributed to Authorized Claimants
who have cashed their prior distributions and who would receive at least $10.00 from
such re-distribution, after payment of any unpaid costs or fees incurred in administering
the Net Settlement Fund for such re-distribution.  Six months after such re-distribution
any remaining balance shall be distributed as the Court may direct.